# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-1026
_____

Michael Reed

*Plaintiff - Appellant*

v.

Malone's Mechanical, Inc., an Arkansas Corporation

*Defendant - Appellee*

Gilbert Project Services, Inc.

*Third Party - Appellee*

_____

Appeal from United States District Court
for the Western District of Arkansas - Ft. Smith

_____

Submitted: December 20, 2013
Filed: August 29, 2014

_____

Before WOLLMAN, LOKEN, and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

Michael Reed claims he was injured when an employee of Malone's Mechanical, Inc. dropped a pipe saddle on him from a scissor lift during a renovation

project at the Simmons Food Plant in Van Buren, Arkansas. Reed filed a negligence action against Malone and others. After a complicated procedural history, the case proceeded to trial where a jury returned a verdict in favor of Malone. Reed appeals, arguing the district court committed numerous trial errors and requesting that the verdict be set aside and the case remanded for a new trial. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. Background

In 2006, Simmons was renovating its Van Buren chicken plant. As part of the project, Simmons hired a number of independent contractors. Malone, a mechanical and plumbing contractor, performed overhead work on the thermal piping designed to carry hot cooking oil to cooking equipment. FMC Food Technologies—Reed's employer—contracted to provide equipment. Simmons hired Gilbert Project Services as the project consulting manager.

On June 4, 2006, Reed was called into the plant to help diagnose a problem with a commercial fryer FMC had sold to Simmons. At the same time, Malone employee Michael Jacobs, along with another Malone employee, was on a raised scissor lift working on overhead pipes. In order to adjust or level pipes, the pipe saddle—a piece of metal weighing between 10 and 12 pounds that supports the pipe—had to be loosened. Usually, the scissor lift is located directly beneath the pipe being adjusted, but here, the location of an oven prevented the scissor lift from being situated directly beneath the pipe. Accordingly, Jacobs was working on a pipe located outside the lift platform and guardrails of the scissor lift. When Jacobs loosened a pipe support, the pipe saddle between the support and the pipe fell, striking Reed. Reed alleges he was injured as a result.

Reed originally sued Malone, Jacobs, and Simmons in federal court, invoking diversity jurisdiction under 28 U.S.C. § 1332. He did not sue Gilbert. Simmons was

granted summary judgment,[1] and Reed then dismissed his lawsuit without prejudice. He did not appeal Simmons' dismissal on summary judgment.

Reed later refiled the lawsuit against Malone and Jacobs,[2] claiming Jacobs was negligent by failing to properly secure the pipe saddle and by failing to warn Reed construction work was going to be done above him. As Malone's employee, working within the scope of his employment, any negligence on the part of Jacobs was imputed to Malone. In its Answer, Malone and Jacobs affirmatively pled defenses of comparative fault and third party fault. They also filed a Third Party Complaint against Gilbert, alleging, as the project manager and supervisor of the project, Gilbert was responsible for scheduling, coordinating, and overseeing all construction activity, including ensuring safety measures were taken when overhead work was done. Malone and Jacobs alleged Gilbert breached its duty by scheduling overhead work while others worked below and by failing to ensure the safety of all workers on the job site. Malone claimed it was entitled to contribution from Gilbert in the event of an adverse judgment.

Gilbert filed a motion to dismiss, asserting any claim was barred by the statute of limitations and the court's rulings in the previous case denying Malone's attempts

---

[1]At the time, the case was before the Honorable Robert T. Dawson, United States District Judge for the Western District of Arkansas. He issued the order granting Simmons summary judgment. He also denied Malone's motion to add Gilbert as a Third-Party Defendant and Motion for Joinder under Fed. R. Civ. P. 19 and 20. Reed has filed a motion for leave to supplement the record on appeal to include these two documents, which Malone has resisted. We grant the motion.

[2]The new case was assigned to the Honorable P. K. Holmes, III, Chief Judge, United States District Judge for the Western District of Arkansas.

to add Gilbert as a party.[3]  In denying the motion to dismiss, the court acknowledged Reed was barred from filing a suit against Gilbert directly due to the statute of limitations.  However, the court found Malone still had a right to contribution from Gilbert, pursuant to the Uniform Contribution Among Tortfeasors Act, Ark. Code Ann. § 16-61-202, et seq.  The court reasoned that because an action for contribution does not accrue under Arkansas law until one joint tortfeasor pays more than his share of the common liability, see Martin Farm Enters., Inc. v. Hayes, 895 S.W.2d 535, 537 (Ark. 1995), Malone's right to seek contribution from Gilbert was not barred by the statute of limitations.  The effect of the court's ruling was that, if the jury found Gilbert liable for any degree of fault, Malone's liability to Reed would be reduced accordingly.  In other words, any award of damages Reed might receive as a result of Malone's negligence could only be reduced by a finding that Gilbert was also negligent.[4]  Because it was no longer in business, Gilbert requested to be excused from active participation at trial.  No party objected.  The district court granted Gilbert's motion, and Gilbert did not attend the trial.

Prior to trial, Reed filed a motion in limine to exclude evidence of, or argument regarding, any negligence on the part of Simmons.  Malone agreed.  The district court granted the unopposed motion, noting "although presentation of evidence regarding Simmons Foods' involvement in the circumstances surrounding the occurrence will undoubtedly be necessary to some extent," the parties were not to present evidence or argue Simmons was negligent.  At trial, Reed requested a jury instruction that stated:

_____

[3]Gilbert argued the court was precluded from reviewing the previous orders under the doctrine of the law of the case.  The district court denied the motion.  As an initial matter, the court found the doctrine of the law of the case did not apply because this was a different case.  It further found that even if the doctrine did apply, it is a doctrine of discretion and did not foreclose the court from correcting any errors.

[4]Reed filed a motion for partial summary judgment on Malone's Third Party Complaint against Gilbert, which was denied by the district court.  None of the parties appealed the court's ruling on the motion for summary judgment.

"[a]s a matter of law, Simmons Foods, Inc. was not negligent in the occurrence." Malone argued the instruction was not necessary and would be confusing to the jury because the issue of Simmons' negligence was not before them. Over Reed's timely objection, the district court declined to give the instruction, agreeing with Malone it was not necessary and could confuse the jury.

Reed also requested the jury be instructed about certain Occupational Safety and Health Administration (OSHA) regulations and policies. Arkansas law allows a jury to consider violations of statutes and regulations as evidence of negligence. See Koch v. Northport Health Servs. of Ark., LLC, 205 S.W.3d 754, 766 (Ark. 2005) (citing Dunn v. Brimer, 537 S.W.2d 164, 165–66 (Ark. 1976)). Reed requested an instruction based on 29 C.F.R. § 1926.451, the regulation that establishes fall protection requirements when an employee is working on a scaffold (scaffold regulation). The district court determined 29 C.F.R. § 1926.501—which sets forth general safety measures to be taken when an employee is exposed to falling objects—more accurately applied to the facts of the case (falling object regulation). In addition, the court informed the parties it would be commenting on the applicability of the regulation to the evidence presented. Reed objected to any comment, but nonetheless requested that the instruction be given. Reed also requested a jury instruction on the applicability of OSHA regulations in a multi-employer worksite. The district court declined to give Reed's proffered instruction, instead giving its own instruction. Reed objected to the wording of the district court's instruction.

At the pretrial conference held August 16, 2012, the court informed the parties it was going to allow jurors to ask questions. The court proposed instructing the jury that if any of them had a question, they should submit it to the court in writing. After the court determined whether the question was proper, the party who had been questioning the witness would ask the question; the other side would then be allowed to follow up. Neither party objected to allowing the jury to submit questions or to the court's proposed procedure.

-5-

On the second day of trial, a juror requested that Jason Gregory, the Malone employee in the scissor lift with Jacobs when Jacobs dropped the pipe saddle, be questioned as to "how many other trades were working overhead." The court allowed the question and Malone asked the question. After both parties had questioned Gregory about other trades, or contractors, working overhead, Reed requested a sidebar. At the sidebar, Reed renewed his oral motion in limine in which he objected to testimony regarding whether contractors other than Malone complied with OSHA regulations. He argued such evidence was inadmissible under Rule 404(b) of the Federal Rules of Evidence, and asked that Gregory's testimony be stricken.[5] The district court denied both the motion in limine and the request to strike the testimony but allowed Reed to have a continuing objection to such evidence.

After both sides rested, but before the case was submitted to the jury, Reed dismissed Jacobs from the case with prejudice. Reed also moved for judgment as a matter of law as to Malone's third-party claim that Gilbert had breached its contractual duties to supervise the project and take reasonable precautions for the safety of all workers on site. The court denied the motion, ruling sufficient evidence had been presented to allow the issue of Gilbert's negligence to go to the jury. The jury was presented with a special verdict form, asking six questions. The jury was asked first to determine whether Malone was negligent. If so, the jury was asked to decide if Reed was negligent and compare fault between Reed and Malone. The jury then was to determine if Gilbert was negligent and, if so, to allocate fault between all the parties—Reed, Malone, and Gilbert. The jury returned a verdict in favor of Malone, obviating the need for it to determine the fault of either Reed or Gilbert.

---

[5]Reed's oral motion in limine was apparently off the record. However, Malone does not contest that such a motion in limine had been discussed the morning prior to Gregory's testimony.

-6-

## II. Discussion

Reed now appeals, asserting the district court erred by (1) inadequately instructing the jury, (2) commenting on a jury instruction, (3) permitting evidence of prior bad acts, and (4) denying his motion for judgment as a matter of law.

## A. Jury Instructions

Reed asserts the district court erred in refusing to include his instruction regarding the negligence of Simmons. He also claims the court erred in its wording of Instruction 15, which advised the jury that violation of a statute or regulation may be evidence of negligence.

Our review of a district court's jury instructions is for an abuse of discretion. Dupont v. Fred's Stores of Tenn., Inc., 652 F.3d 878, 882 (8th Cir. 2011). "A district court possesses 'broad discretion in instructing the jury, and jury instructions do not need to be technically perfect or even a model of clarity.'" McCoy v. Augusta Fiberglass Coatings, Inc., 593 F.3d 737, 744 (8th Cir. 2010) (quoting Brown v. Sandals Resorts, Int'l, 284 F.3d 949, 953 (8th Cir. 2002)). "'Our review is limited to whether the instructions, taken as a whole, fairly and adequately represent the evidence and applicable law in light of the issues presented to the jury in a particular case.'" Id. (quoting Brown, 284 F.3d at 953). "'The jury should receive instructions on issues supported by competent evidence in the record; the trial court is not required to instruct on issues that do not find support in the record.'" Id. (quoting Brown, 284 F.3d at 953). "And, even if we find that a district court erroneously instructed the jury, we will reverse 'only where the error affects the substantial rights of the parties.'" Id. at 744–45 (quoting Brown, 284 F.3d at 953).

"[A] district court's decision to reject a proposed jury instruction also is reviewed for an abuse of discretion." Retz v. Seaton, 741 F.3d 913, 919 (8th Cir.

2014). The court does not abuse its discretion in denying a requested instruction "if the instruction[s] actually given by the trial court adequately and correctly cover[] the substance of the requested instruction." Id. (quotation omitted). "Our review is limited to a determination of whether the instructions fairly and accurately present the evidence and law to the jury given the issues in the case." Id. (quotation omitted).

## 1. Instruction Regarding Simmons

Reed first argues the district court abused its discretion when it failed to give his requested jury instruction that "[a]s a matter of law, Simmons Foods, Inc. was not negligent in the occurrence." Reed asserts he was entitled to his instruction as an accurate statement of the law because Simmons had previously been dismissed from the first lawsuit on summary judgment, and therefore "the doctrine of either collateral estoppel or res judicata bars relitigation of the issue in a subsequently [sic] refiling of the same action." The district court declined to give Reed's instruction. The court noted Reed had specifically requested prior to trial that all parties be collaterally estopped from presenting evidence or argument implicating Simmons in regard to this occurrence. Because the parties were prevented from presenting evidence or argument regarding Simmons' negligence, the court ruled a jury instruction regarding Simmons' negligence was not necessary and, without further explanation, would potentially and unnecessarily confuse the jury.

On appeal, Reed acknowledges Malone "did not specifically contend at trial that Simmons was negligent." Nonetheless, Reed asserts there was significant evidence presented from which the jury could have *inferred* Simmons Foods was negligent. Reed claims the type of case presented—a pipe saddle falling from above and hitting Reed on the head—is the type of case that does not occur in the absence of negligence.[6]

---

[6]Throughout his argument, Reed likens this case to a case brought under the doctrine of *res ipsa loquitur*. We do not understand him to be claiming error on the

-8-

Reed contends that because this type of injury cannot happen without *someone* being negligent, the issue for the jury to decide was not *whether* someone was negligent but *who* was negligent: Malone, Simmons, or Gilbert. He asserts that failure to give the proffered instruction resulted in prejudice to him, requiring a new trial. We disagree.

In Instruction 10, the district court instructed the jury that in order for the jury to find Malone's negligence caused Reed's damages, Reed had to show: (1) he sustained damages; (2) Malone was negligent; and (3) Malone's negligence was a proximate cause of his damages. Malone denied its negligence, claiming both Reed and Gilbert were negligent and their negligence caused Reed's injuries. In Instructions 11 and 12, the court instructed the jury it was Malone's burden to prove both of these contentions. Instruction 14 advised: "[t]he fact that an accident occurred is not, of itself, evidence of negligence or fault on the part of anyone." Reed did not object to any of these instructions.

Reed argues the only explanation for the jury's verdict is that the jury decided Simmons was completely responsible for his injuries. We find no basis to accept Reed's conclusion. We note first that while Simmons was discussed at trial, neither party argued in closing arguments Simmons was negligent. Also, as outlined above, the jury had the option of finding Malone, Reed, and/or Gilbert—or no one at all—responsible for Reed's injuries. We will not speculate that, because the jury found Malone was not negligent, it must have found Simmons at fault. See Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc., 528 F.3d 1001, 1022–23 (8th Cir. 2008) ("Absent evidence to the contrary we presume the jury followed the instructions it was given."). Accordingly, we find no abuse of discretion in the court's refusal to give the proffered instruction.

---

part of the district court for not instructing on *res ipsa loquitur*, however, and note he did not request a jury instruction on this theory.

## 2. Instruction Regarding OSHA Regulations

Reed next argues the district court erroneously instructed the jury regarding OSHA regulations. Reed raises two objections to Instruction 15, which instructed the jury that a violation of a statute or regulation could be considered evidence of negligence. Using the format of Arkansas Model Instruction 601, the district court instructed the jury:

FINAL INSTRUCTION NO. 15

**VIOLATION OF STATUTE OR REGULATION AS EVIDENCE OF NEGLIGENCE**

There was in force in the United States of America, at the time of the occurrence, a statute that provided:

**29 U.S.C. § 654 Duties of Employers and Employees**

(a) Each employer shall comply with OSHA standards.
(b) Each employee shall comply with OSHA standards which are applicable to his own actions and conduct.

There was also in force in the United States of America, at the time of the occurrence, regulations that provided:

<u>First:</u> **29 C.F.R. § 1926.501 Duty to Have Fall Protection**

Protection from falling objects. When an employee is exposed to falling objects, the employer shall have each employee wear a hard hat and shall implement one of the following measures:

(1) Erect toeboards, screens, guardrail systems to prevent objects from falling from higher levels; or,

(2) Erect a canopy structure and keep potential fall objects far enough from the edge of the higher level so that those objects would not go over the edge if they were accidentally displaced; or,

(3) Barricade the area to which objects could fall, prohibit employees from entering the barricaded area, and keep objects that may fall far enough away from the edge of a higher level so that those objects would not go over the edge if they were accidentally displaced.

Second: **29 C.F.R. § 1926.21(b)(2) Safety Training and Education**

The employer shall instruct each employee in the recognition and avoidance of unsafe conditions and the regulations applicable to his work environment to control or eliminate any hazards or other exposure to illness or injury.

A violation of this statute or one or more of these regulations, although not necessarily negligence, is evidence of negligence to be considered by you along with all of the other facts and circumstances in the case.

Reed proffered a jury instruction based on 29 C.F.R. § 1926.451(h)(2), the scaffold regulation. Instead, the court instructed the jury on 29 C.F.R. § 1926.501, the general falling object regulation. Reed contends his proffered instruction was more appropriate than the instruction given because § 1926.451 applies to scaffolds, which includes scissor lifts. See 29 C.F.R. § 1926.450(b).

In determining which regulation to use as the basis for the jury instruction, the district court examined the language and OSHA interpretations of 29 C.F.R. § 1926.451, the scaffold regulation. From these sources, the district court concluded the scaffold regulation applied to objects falling from a scaffold and to employees on a scaffold. Because there was no evidence that anything fell from the scissor lift, the district court concluded the general falling object protection requirements of 29 C.F.R. § 1926.501 were more applicable to the facts of the case.

-11-

Reed asserts he was prejudiced by the court's decision to give the general falling object instruction rather than his proffered scaffold instruction. We disagree. Here, both instructions advised there was a regulation that required employees to be protected from falling objects and listed measures to be taken to provide that protection, such as toeboards, guardrails, and barricades.[7] Reed's proposed instruction added measures that seem more appropriate to protect people below from tools, materials, or equipment falling from *inside* the scissor lift itself.[8] Reed does not dispute his instruction included protections for objects falling from inside the scissor lift but argues his instruction was appropriate because there was evidence of tools and other objects on the platform of the scissor lift, which could have fallen on people below. However, that is not what happened in this case. There is no allegation tools—or anything else from inside the scissor lift—fell out. Rather, an object located outside the scissor lift fell and hit Reed. The trial court is not required to instruct on issues not supported by the evidence. McCoy, 593 F.3d at 744 (quotation omitted). Nor is a party entitled to a particularly worded instruction. Retz, 741 F.3d at 919 (quotation omitted).

The district court's instruction told the jury there was an OSHA regulation requiring fall protection. The instruction further informed the jury that violating this regulation is evidence of negligence, to be considered along with the other facts and circumstances of the case. The court's instruction included the safety measures

---

[7]We note Reed does not dispute the scissor lift involved had toeboards and guardrails.

[8]Reed's instruction outlined required safety measures when "tools, materials, or equipment are piled to a height higher than the top edge of the toeboard" on a scissor lift, including the installation of (1) "paneling or screening," (2) "[a] guardrail system . . . with openings small enough to prevent passage of potential falling objects," or (3) "[a] canopy structure, debris net, or catch platform strong enough to withstand the impact forces of the potential falling objects." See 29 C.F.R. § 1926.451(h)(2).

applicable to the evidence presented. The instruction "fairly and adequately present[ed] the evidence and law to the jury given the issues in the case." Id. Moreover, Reed asserted in closing arguments Malone had a duty to follow OSHA regulations. The district court did not abuse its discretion in submitting this jury instruction.

Reed next asserts the district court erred in refusing his requested jury instruction based on the OSHA Multi-Employer citation policy (Multi-Employer Policy). This policy outlines factors OSHA considers in determining which employer at a multi-employer construction site can be cited for OSHA violations. Reed requested the following language be included in Instruction 15:

> In a worksite where more than one employer is present, the OSHA Regulations that I have instructed you about created a specific duty of compliance by all employers for the good of all employees on the worksite.

After the court rejected Reed's proffered language, Reed requested the following instruction be given:

> In regards to the regulation I just read to you, when more than one employer is involved at a particular work site, more than one employer may be responsible for complying with the above regulation for the safety of all employees at the work site.

The court declined this instruction as well. Reed argues his instruction was a correct statement of the applicable law according to Solis v. Summit Contractors, Inc., 558 F.3d 815, 828–29 (8th Cir. 2009), and that he was prejudiced by the court not giving it. We disagree. As we recently stated, "[t]hough a violation of an OSHA regulation may be relevant evidence of whether [Malone] breached a duty it may have owed the plaintiffs, see Dunn v. Brimer, 259 Ark. 855, 537 S.W.2d 164, 165—66 (1976), the regulations do not independently create private rights of action or impose

-13-

alternate duties on defendants." Chew v. Am. Greetings Corp., 754 F.3d 632, 637 (8th Cir. 2014) (citing Solis, 558 F.3d at 828–29). Instruction 15 summarized the statute on which the multi-employer policy is based—29 U.S.C. § 654—and told the jury that violation of that statute may be considered evidence of negligence. Because the instruction is a correct statement of the law, we find no abuse of discretion.

## B. Court's Comment on Instruction 15

Reed next argues the district court's comment regarding Instruction 15 was improper and prejudiced him such that he should receive a new trial. We review whether a district court's comment on the evidence was improper under an abuse of discretion standard. Warren v. State Farm Fire & Cas. Co., 531 F.3d 693, 698 (8th Cir. 2008). "The trial court has broad discretion in commenting on evidence and may do so in order to give appropriate assistance to the jury." Id. at 701 (quotation omitted). "The only limitation on this discretion is that the comments must not preclude a fair evaluation of the evidence by the jury." Id. (quotation omitted).

As outlined above, Reed requested an instruction on duties concerning fall protection for a scaffold. The district court decided the proper regulation from which to instruct the jury was the general fall protection regulation. Upon further review of the evidence presented, however, the district court questioned whether either regulation applied because either could be interpreted to require fall protection only when there was a risk of objects falling from *inside* the scissor lift. Exercising its discretion to give assistance to the jury, the court offered Reed the option of either (1) not instructing on the regulation, or (2) having the court instruct but comment on whether that regulation applied to the facts of this particular case. Reed objected to any comment, but requested the general fall protection instruction be given. The district court made the following comment after reading the instruction:

-14-

Now, at this time I'm going to deviate from the instructions and make a comment. In federal court, judges are permitted to comment on the evidence. At this time, I will comment on the evidence as it relates to this instruction. This instruction was requested by the Plaintiff. The Court has questions as to whether the evidence in this case applies to the Code of Federal Regulation on the duty to have fall protection. This is because the regulation does not define the location of the falling object. A reading of the regulation would seem to apply to objects on the top of the higher level such as a platform, and that precaution be taken to make certain the object does not fall off the edge of the higher platform. Again, a violation of a regulation is not necessarily negligence, but evidence of negligence that can be considered by you along with other facts and circumstances of the case.

A trial judge may comment on the evidence "so long as he does so fairly and impartially, and he may express his opinion upon the facts so long as he makes it clear to the jury that all matters of fact are submitted to their determination." Gant v. United States, 506 F.2d 518, 520 (8th Cir. 1974). Here, Instruction 19—entitled "Judge's Opinion"—told the jury: "Neither in these instructions nor in any ruling, action or remark that I have made during the course of this trial have I intended to give any opinion or suggestion as to what your verdict should be. . . . What the verdict shall be is the sole and exclusive duty and responsibility of the jury."

Reed argues the court's comments "left the distinct impression that OSHA regulations did not mandate fall protection when an object fell from outside an elevated scissor lift" and "essentially told the jury to disregard the instruction." He contends the prejudicial effect of the comment was further compounded when the court told the jury Reed requested the instruction.[9] We disagree.

---

[9]Malone originally proffered a similar instruction but then asked that no instruction be given.

-15-

As noted above, there was no evidence anything fell from inside the scissor lift and hit Reed. In its comment, the court noted the possibility the regulation did not apply at all, given the evidence. Violation of the regulation might be evidence of whether Malone breached a duty to Reed, but the jury first needed to decide whether the regulation applied to the evidence presented. When coupled with the court's instruction that it did not intend with its remarks to suggest what the verdict should be, we cannot say the court's comment "precluded a fair evaluation of the evidence by the jury." Warren, 531 F.3d at 701 (quotation omitted).

We also reject as speculative Reed's assertion the court's identification of Reed as the party requesting the instruction so prejudiced him that he is entitled to a new trial. "Mere speculation that a jury verdict may have been based on the jury's own misunderstanding of the law, even though properly instructed, is an insufficient basis on which to upset a jury verdict." Craig Outdoor Adver., 528 F.3d at 1022–23 (quotation omitted). Given the district court's "broad discretion in commenting on evidence," Warren, 531 F.3d at 701 (quotation omitted), we find no abuse of discretion.

## C.  Evidence Regarding Other Contractors

Reed argues the district court erred in allowing testimony regarding what procedures contractors other than Malone were using when working overhead on the same project. We accord the district court "wide discretion in admitting and excluding evidence, and its decision will not be disturbed unless there is a clear and prejudicial abuse of discretion." Weitz Co. v. MacKenzie House, LLC, 665 F.3d 970, 975 (8th Cir. 2012) (quotation omitted). "To warrant reversal, such a prejudicial abuse of discretion must also affect the substantial rights of a party." Id. (quotation omitted).

During the trial, there was testimony other contractors also worked above employees without barricades or protective devices below during the course of the

-16-

Simmons project. Reed objected to the evidence as inadmissible under Fed. R. Evid. 404(b). Rule 404(b) prohibits the admission of "[e]vidence of a crime, wrong, or other act . . . to prove a person's character to show that on a particular occasion the person acted in conformance with the character." Id. The district court disagreed with Reed's characterization, noting the evidence did not concern a prior act. Rather, the testimony described acts done by other contractors doing similar work at the same worksite, in the course of the same project, and under the alleged control and/or direction of the same project manager, Gilbert.

Assuming *arguendo* the evidence was 404(b) evidence, the court nonetheless found the evidence admissible to show Gilbert had knowledge of what safety measures other contractors at the worksite were taking when their employees were working above other workers. Rule 404(b) does not prohibit the admission of such evidence if it is "admissible for [a permissible] purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, or lack of accident." Id. Malone argued Gilbert had a duty to ensure a safe worksite, which it breached. The district court ruled evidence that Gilbert had knowledge of the practices of other contractors besides Malone was admissible to show Gilbert knew those other contractors took no safety precautions when their employees were working above other workers. The court found such evidence tended to show Gilbert was negligent in performing its supervisory duties, which included ensuring the provision of adequate preventive safety measures. Because the jury was asked to consider not only whether Reed or Malone were negligent, but also whether Gilbert was negligent, we find the court did not abuse its discretion in admitting this evidence.

## D. Denial of Judgment as a Matter of Law

Finally, Reed asserts the district court erred in failing to grant his motion for judgment as a matter of law as to Malone's third-party claim against Gilbert. Reed argues the evidence showed Gilbert was no longer providing consulting services on the

date he was injured and thus owed no duty to Reed or Malone. Malone opposed the motion, pointing to evidence Gilbert was still consulting on the date of the injury. We review de novo a district court's denial of a motion for judgment as a matter of law. Weitz, 665 F.3d at 974. "We must affirm the jury's verdict unless, viewing the evidence in the light most favorable to the prevailing party, we conclude that a reasonable jury could not have found for the party." Marez v. Saint-Gobain Containers, Inc., 688 F.3d 958, 962–63 (8th Cir. 2012) (quotation omitted). "In deciding whether to grant judgment as a matter of law, we may not weigh the credibility of evidence, and conflicts in the evidence must be resolved in favor of the verdict." Id. at 963 (quotation omitted).

As he did below, Reed argues Gilbert's fault should not have been submitted to the jury because the contract between Gilbert and Simmons expired on May 1, 2006, and he was not injured until June 4, 2006. He asserts that because the contract had expired, Gilbert owed no duty to anyone at the time of the accident. He concedes Andy Gilbert testified there was a contract addendum between Gilbert and Simmons, which extended the time for Gilbert's services on the project beyond May 1.[10] He asserts this evidence is insufficient, however, because no written addendum was introduced at trial. He further claims the only obligation Gilbert had on June 4 was to turn over documents to Simmons so its management team could take over.[11]

Malone points to project schedules and Gilbert's billing records to show Gilbert was providing consulting services to Simmons before and after Reed's date of injury. In addition, Malone contends there was evidence Gilbert was aware before June 4 that Malone and other contractors were conducting overhead work in the area where Reed

---

[10]Although Gilbert did not participate in the trial, portions of Andy Gilbert's deposition were read into the record.

[11]There is no dispute Gilbert had no personnel physically present at Simmons on June 4, 2006.

was injured. Malone argues Gilbert, as the project consultant, either had a duty to take precautions for the safety of workers below or a duty to instruct Malone and other contractors what precautions to take to protect workers from falling objects. Finally, Malone points to Gilbert's participation in weekly safety meetings on the project as indicating it had a duty to warn about falling object protection.

Our role on appeal is not to weigh or evaluate evidence. Because reasonable minds could disagree as to whether Gilbert had a duty to Reed or Malone prior to or on the day of the accident, we conclude the district court did not err in denying Reed's motion for judgment as a matter of law.

### III.  Conclusion

Based on the foregoing, we affirm.

_____